**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 13-cv-00938-CMA

CHRISTOPHER GATES,

    Plaintiff-Appellant,

v.

CAROLYN W. COLVIN, Acting Commissioner Social Security,

    Defendant-Appellee.

---

**ORDER AFFIRMING ALJ'S DECISION DENYING DISABILITY BENEFITS**

---

This matter is before the Court on Plaintiff Christopher Gates's appeal of the Commissioner's decision denying his claim for disability benefits. Exercising jurisdiction under 42 U.S.C. § 405(g), this Court affirms the decision of the Administrative Law Judge ("ALJ").

## I. BACKGROUND

Plaintiff's alleged disabilities stem from a May 2006 traffic accident in which he fractured his right thigh, and his right and left pelvis. He argues this incident left him in chronic pain and dependent on pain medications. He further alleges that these impairments are compounded by depression, injuries he suffered as a collegiate wrestler, and a June 2009 bike accident in which he broke both of his hands. *See, e.g.*, (AR at 177; 181-82; 393.) Finally, although Plaintiff originally alleged a disability onset date of May 7, 2006 (AR at 73, 376)—*i.e.*, just after the aforementioned traffic

accident—at the hearing before the ALJ, Plaintiff's attorney asked the ALJ to amend Plaintiff's alleged onset date to January 1, 2010. (AR at 390.)

On March 29, 2012, the ALJ issued a decision finding Plaintiff was not disabled. As relevant here, the ALJ found as follows:

- Plaintiff had the following severe impairments: status post acetabular (part of pelvis) fracture, status post right femoral (thigh) head fracture, status post left superior pubic rami (part of pelvis) fracture, status post ischial pubic rami (part of pelvis) fracture, history of disc herniation, flexion deformity of the right upper extremity fifth digit, status post left wrist fracture, status post MCP (metacarpophalangeal joint) ligament tear of the left thumb, and depression. (AR at 20.)

- Plaintiff had a residual functional capacity that allowed him to: lift and carry ten pounds frequently and twenty pounds occasionally; stand and walk four hours of an eight-hour day; occasionally climb, balance, stoop, kneel, crouch, and crawl; frequently but not constantly reach, handle, finger, and feel bilaterally; avoid extremes of temperature; and occasionally interact with co-workers, supervisors, and the general public. (AR at 23.)

- Although Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, his statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent they were inconsistent with her residual functional finding. (AR at 24.)

- Plaintiff's allegations of severe side effects due to medication were not credible, since he rarely reported any adverse side effects to his doctors and frequently noted that medications improved his pain. (AR at 25.)

Plaintiff appealed this determination to the Appeals Counsel, which declined review (AR at 7-9), making the ALJ's decision final for purposes of review by this Court. Plaintiff now appeals the ALJ's decision to this Court.

## II. STANDARD OF REVIEW

This Court's review of the ALJ's determination is limited to determining whether the ALJ's decision is supported by substantial evidence and whether the

Commissioner—through the ALJ—applied the correct legal standards. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance. *Wall*, 561 F.3d at 1084. In reviewing the record and the arguments of counsel, the Court does not reexamine the issues *de novo*, *Sisco v. United States Department of Health and Human Services*, 10 F.3d 739, 741 (10th Cir. 1993), nor does it re-weigh the evidence or substitute its judgment for that of the Commissioner, *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). Thus, even when some evidence may have supported contrary findings, the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court may have "made a different choice had the matter been before it de novo." *Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007).

### III. ANALYSIS

Plaintiff raises two claims on appeal. First, he alleges that the ALJ's decision to accord less weight to the opinion of two of his treating physicians—Drs. Derrick Weaver and Miriam Choate—was not in accord with the process prescribed by the Social Security Regulations for rejecting the opinion of such medical sources. Second, he argues that the ALJ erred in not explicitly considering a number of records that **his attorney** failed to include as records before the ALJ. The Court considers each argument in turn.

### A.     OPINIONS OF DRS. WEAVER AND CHOATE

#### 1.     Standard

Plaintiff's first claim is that the ALJ erred in the manner she considered reports prepared by Drs. Weaver and Choate, whose opinions as treating physicians are generally given greater weight. Indeed, in accord with the Tenth Circuit's decision in *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003), if the ALJ seeks to discount the opinion of a treating physician, he should consider a number of factors in doing so.

*Watkins* provides a two-step process for considering the opinion of a treating physician. At *Watkins* step one, the ALJ determines whether the opinion is entitled to "controlling weight" by assessing whether it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at 1300 (quoting SSR 96–2p, 1996 WL 374188, at *2). If the ALJ determines that the opinion is not entitled to "controlling weight," he must proceed to the second *Watkins* step, in which he must consider a number of factors outlined in 20 C.F.R. § 404.1527 and 416.927, and then provide sufficient reasoning for the weight, if any, he assigns the opinion. The factors to be considered at *Watkins* step two include the following:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* at 1301.

While *Watkins* prescribes this two-step process, the ALJ is not required to "apply expressly" all of the *Watkins* factors in deciding what weight to give a treating source's opinion. *Oldham*, 509 F.3d at 1258-59 (citing *Watkins*, 350 F.3d at 1300; 20 C.F.R. § 404.1527)). Further, if the ALJ rejects the opinion of a treating source, the ALJ's decision should be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Watkins*, 350 F.3d at 1300; *see also* 20 C.F.R. § 404.1527 (noting that if the ALJ rejects a treating source opinion, he must give "specific, legitimate reasons" for doing so).

2. Application

As an initial matter, Plaintiff suggests that if an ALJ seeks to discount the opinion of a treating source, the ALJ "must" apply the factors referenced in *Watkins* and reference each in her written opinion. (Doc. # 26 at 3.) This Court rejects Plaintiff's attempt to impose a rigid framework onto the process for considering the opinions of physicians who serve as treating sources. *Watkins* does not require the ALJ to go through a checklist of factors that must be referenced in an opinion, on pain of committing reversible error. *See Oldham*, 509 F.3d at 1258-59.[1]

---

[1] Relatedly, Plaintiff suggests that it constitutes reversible error for an ALJ to give "little weight" to an opinion without citing the specific portion of the opinion that has been credited. (Doc. # 18 at 30.) Plaintiff, however, cites no authority in support of this position and other courts have rejected similar attempts to impose overly technical requirements on an ALJ's opinion if the ALJ has sufficiently explained the basis for his decision. *Cf. Manley v. Barnhart*, 154 F. App'x 532, 536 (7th Cir. 2005) ("We can find no case holding that an ALJ who explains the basis for disfavoring a treating physician's opinion must also state precisely how much weight—beyond 'not controlling'—he places on it." (relying on, *inter alia*, *Watkins*)).

Further, the ALJ provided sufficiently specific and clear reasons for rejecting these doctors' opinions—and this reasoning in turn is supported by substantial evidence.

First, the ALJ properly gave little weight to Dr. Weaver's opinion because it was inconsistent with the record as a whole and appeared to be based primarily on Plaintiff's subjective complaints. (AR at 27); *see also Watkins*, 350 F.3d at 1300 (noting that two of the factors to be considered are "the degree to which the physician's opinion is supported by relevant evidence" and the "consistency between the opinion and the record as a whole").

Dr. Weaver found that Plaintiff could sit for a total of only fifteen percent of an eight-hour workday (*i.e.*, a little over an hour) and needed a cane to walk. (AR at 224-26.) However, as the ALJ noted, this position is inconsistent both with the opinions and objective findings of a number of other medical sources and with Plaintiff's own descriptions of his daily activities. *See, e.g.*, (AR at 216-17) (finding from Dr. Nicole R. Warnygora, a psychologist, that Plaintiff sat for two and a half hours without difficulty when she evaluated him and that Plaintiff reported helping with chores such as irrigating the fields, cleaning out tumbleweed, walking the ditches, and lambing); (AR at 188, 214, 230) (radiological findings from 2009 that revealed good healing of Plaintiff's fractures); (AR at 213) (opinion of one consultative examiner, Dr. Raymond Tilty, who determined that Plaintiff had a maximum sitting capacity of six hours); (AR at 308-09) (finding from a second consultative examiner, Dr. Stacy Livingwell, who determined that Plaintiff's cane was medically unnecessary, that Plaintiff was able to hop and squat on both his right

and left leg without difficulty; and that Plaintiff had full strength in both the upper and lower extremities).[2]

Second, the ALJ did not err in according little weight to Dr. Choate's RFC. (AR at 27.) The ALJ discounted Dr. Choate's RFC because, *inter alia*: it was filled out in a very short amount of time, during which Dr. Choate conducted—at most—a brief examination of Plaintiff; it was contrary to Plaintiff's hearing testimony; and it was based primarily on Plaintiff's subjective complaints. (*Id.*)

All of these rationales for discounting Dr. Choate's opinion find substantial evidentiary support in the record. *Compare, e.g.*, (AR at 319) (finding from Dr. Choate that Plaintiff can never lift any weight during a workday in part because of rheumatoid arthritis); (AR at 320) (finding from Dr. Choate that Plaintiff has no ability to use his hands during an eight hour work day), *with* (AR at 216) (notation by Dr. Warnygora that Plaintiff reported that his chores include clearing tumbleweeds and lambing); *see also* (AR at 374) (noting that Dr. Choate spent "[more than] 20 minutes of [a] 25 minute [appointment] counseling [Plaintiff] on med interactions and side effects for psych meds," which suggests both that there was insufficient time for much of a physical

---

[2] Plaintiff suggests that the government has offered only post-hoc rationalizations supporting the ALJ's decision to discount Dr. Weaver's opinion. (Doc. # 26 at 2.) Plaintiff misinterprets the ALJ's opinion. The ALJ noted that Dr. Weaver's position was inconsistent with "the record as a whole" (AR at 27), and throughout her opinion cited specific instances of contrary findings in the record that she credited. This is sufficient for this Court to establish that the ALJ's determination as to Dr. Weaver's opinion is supported by substantial evidence.

evaluation of Plaintiff and that Dr. Choate's appraisal of Plaintiff was based largely on Plaintiff's subjective complaints).[3]

## B.      ALJ'S DUTY TO FURTHER DEVELOP THE RECORD

Next, Plaintiff argues that the ALJ did not adequately develop the record because she did not obtain and discuss the treating source statements mentioned in the portions of a "Position Statement" that his attorney submitted to the ALJ prior to the hearing. (AR at 113-31.)  These statements, which were attached to Plaintiff's opening brief before this Court, include five additional records from September 2006 through October 2008 and contain representations and additional RFCs from medical sources, including Dr. Weaver, that generally support Plaintiff's position that he is more limited in his functioning than the ALJ found in her opinion.  (Doc. # 18-1; 18-2; 18-3)

Plaintiff's attorney did not upload these documents into the record considered by the ALJ because she thought they were already part of the record.  (Doc. # 18 at 21) These documents, however, were apparently part of Plaintiff's prior application for disability benefits, which had been denied by the agency on February 28, 2007.

---

[3]  Plaintiff suggests that the ALJ was inconsistent in discrediting Dr. Choate's opinion both because it relied on Plaintiff's subjective complaints and because it contradicted Plaintiff's hearing testimony.  (Doc. # 18 at 30.)  These are not inconsistent findings: as should be clear from the authorities cited above Plaintiff's subjective claim of pain was undermined by a subsequent inconsistent statement that revealed that the claim to pain was false or overstated. In her Reply, Plaintiff also points to a number of pieces of evidence which support his view that he is more disabled than the ALJ's opinion concluded.  (Doc. # 26 at 5.)  This is nothing more than an exercise in cherry-picking the evidence that supports Plaintiff's position, while ignoring the evidence, cited above, that would support a contrary conclusion.  While Plaintiff's preferred evidence might make a difference if the Court were reviewing the ALJ's determination *de novo*, that is not this Court's task.  See *Salazar*, 468 F.3d at 621.

Plaintiff advances two arguments for why blame rests with the ALJ (and not his attorney) for the fact that the ALJ did not explicitly reference these documents in her written opinion or include them as exhibits in the record.  First, Plaintiff appears to argue that, because the new application for benefits was filed on October 5, 2009, within two years of the denial of Plaintiff's prior application, the ALJ had an obligation to reopen the prior application and then find and consider these five records.

Second, Plaintiff notes that these five records were also referenced by Plaintiff in the "Position Statement" he submitted to the ALJ prior to the hearing.  The Position Statement is eighteen single-spaced pages and contains references to several dozen medical records that were included as exhibits by the ALJ.  Plaintiff appears to argue that referencing these five statements in the Position Statement put the ALJ on notice that she had to explicitly consider them in her assessment of Plaintiff's disability.

Plaintiff's position here is untenable for a number of reasons.  First, aside from referencing the Commissioner's generalized duty to develop a Plaintiff's complete medical history preceding the filing of an application for disability benefits, Plaintiff cites no legal authority in support of his argument that the ALJ should have gone rooting in a prior application for disability after his attorney failed to provide certain documents as part of the record in a new application.

Second, at the hearing (and after Plaintiff had submitted his Position Statement), Plaintiff's attorney amended Plaintiff's alleged onset of disability to January 1, 2010.  (AR at 390.)  It is therefore unclear to this Court: (1) how records made years before January 1, 2010, would have been relevant to the ALJ's determination of disability from

9

this date going forward; (2) why the ALJ was under an affirmative obligation to reopen a record from a prior disability claim which had been denied in February 2007 to determine the validity of a disability claim with an onset date almost three years subsequent to this date; or (3) why the failure to consider these records constitutes reversible error. The government raised essentially the same points in its Response (Doc. # 23 at 14), but Plaintiff failed to address these arguments in his Reply.

Third, the documents that were not made part of the official record provide cumulative or irrelevant information in light of the findings made by the ALJ in his opinion. For example, one of these records is a May 2008 RFC from Dr. Weaver that is nearly identical to the January 2009 RFC that the ALJ properly rejected for the reasons discussed above. (Doc. # 18-2.) Another record, a December 2007 RFC filled out by another physician, was based not on a physical examination but rather solely on Plaintiff's "personal account of how his injuries restrict his activities." (Doc. # 18-2 at 7) The third record comprises a series of records from 2006-2007 that estimate, with virtually no explanation, that Plaintiff will be disabled for twelve months or longer. (Doc. # 18-1.)

Fourth, any actual error committed by the ALJ with respect to these records was harmless, in light of the ALJ's overall analysis of Plaintiff's disabilities. *See Keyes– Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) (If "we can follow the adjudicator's reasoning in conducting our review and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal.").

## IV. **CONCLUSION**

This Court finds that the ALJ's decision was supported by substantial evidence and the ALJ committed no legal error in reaching her adverse finding as to Plaintiff's disabilities.

Accordingly, it is ORDERED that the ALJ's denial of disability benefits is AFFIRMED. It is FURTHER ORDERED that each party shall pay its own costs and attorneys' fees.

DATED: May __13__, 2014BY THE COURT

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge